NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**QUALTRICS, LLC,**
*Appellant*

**v.**

**OPINIONLAB, INC.,**
*Appellee*

---

2016-1177

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2014-00366.

---

Decided: February 13, 2017

---

ROBERT STEINBERG, Latham & Watkins LLP, Los Angeles, CA, argued for appellant. Also represented by GABRIEL BELL, ROBERT J. GAJARSA, Washington, DC.

CHRISTOPHER WOOD KENNERLY, Paul Hastings LLP, Palo Alto, CA, argued for appellee. Also represented by NAVEEN MODI, IGOR VICTOR TIMOFEYEV, Washington, DC.

---

Before PROST, *Chief Judge,* NEWMAN and LOURIE, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Qualtrics, LLC ("Qualtrics") appeals from the written decision of the United States Patent and Trademark Office ("PTO") Patent Trial and Appeal Board ("the Board") in an *inter partes* review ("IPR") proceeding concluding that claims 1, 2, 5, 8, 10, 11, 14, 17–19, 22, 25–27, 30, and 33 ("the challenged claims") of U.S. Patent 8,041,805 ("the '805 patent"), owned by OpinionLab, Inc. ("OpinionLab"), are not unpatentable as obvious. *Qualtrics, LLC v. OpinionLab, Inc.*, IPR2014-00366, 2015 WL 4627944, at \*6 (P.T.A.B. July 30, 2015) ("*Final Decision*"). Because the Board did not err in concluding that the challenged claims are not unpatentable, we *affirm*.

BACKGROUND

OpinionLab owns the '805 patent, which describes a system and method for gathering feedback from visitors to a website. *See* '805 patent, col. 1 l. 64–col. 2 l. 18. According to the patent, most prior art systems did "not provide website owners with information about how users subjectively react to their websites." *Id.* col. 1 ll. 36–38. Without subjective feedback, it was difficult for website owners to know how visitors navigated their sites and therefore difficult to gauge how effectively each page engaged with visitors. *Id.* col. 1 ll. 41–51. Even systems that provided subjective feedback only provided reactions to the entire website, rather than to any particular web page. *Id.* col 1 ll. 38–43.

The '805 patent purports to improve on those prior art systems by allowing website visitors to provide feedback relating to a particular web page while the user remains at that page. *Id.* col. 14 ll. 11–31, col. 16 ll. 16–41. Claim 1 is exemplary:

1. One or more computer-readable non-transitory storage media embodying software operable when executed to:

provide a user-selectable element viewable on each of a plurality of particular web pages of a website upon initial display of a particular web page and soliciting page-specific user feedback concerning the particular web page upon initial display of the particular web page, the user-selectable element appearing identically and behaving consistently on each of the plurality of particular web pages; and

receive the page-specific user feedback concerning the particular web page for reporting to an interested party, *the page-specific user feedback concerning the particular webpages having been provided by a user while the user remained at the particular web page*, and the page-specific user feedback comprising one or more page-specific subjective ratings of the particular web page and one or more associated page-specific open-ended comments concerning the particular web page, the page-specific user feedback allowing the interested party to access page-specific subjective ratings and associated page-specific open-ended comments across the plurality of particular web pages to identify one or more particular web pages for which the page-specific user feedback is notable relative to page-specific user feedback for other particular web pages;

wherein the user-selectable element is viewable within a browser window upon initial display of the particular web page and remains viewable within the browser window, at least prior to the user selection, regardless of user scrolling.

*Id.* col. 25 l. 40–col. 26 l. 3 (emphasis added).  The patent contends that the system that it describes is easier to use than existing systems, and will result in an increased response rate.  *Id.* col. 2 ll. 55–67.

Qualtrics petitioned for IPR, arguing that the challenged claims are unpatentable as anticipated and/or obvious.  J.A. 2137–43.  The Board instituted review on the basis that the challenged claims would have been obvious over a combination of three references: (1) a printout of and source code for the website Customer-Sat.com, offering a service for receiving visitor feedback through surveys accessed through a "Pop!Up" questionnaire ("CustomerSat"), *see* J.A. 388–464; (2) a book authored by David Medinets for teaching the PERL software programming language, describing a feedback form that can be accessed by clicking a "submit" button ("Medinets"), *see* J.A. 465–530; and (3) the specification for the HTML web publishing language ("HTML Spec"), *see* J.A. 977–1343.

In its Patent Owner Response, OpinionLab argued that the combination of CustomerSat, Medinets, and HTML Spec did not disclose or suggest receiving customer feedback while the visitor "remained at a particular web page," as required by the challenged claims.  J.A. 204–06.  According to OpinionLab, CustomerSat required the user to take a survey while the visitor was at a different web page.  *See id.*  OpinionLab argued that this limitation was used to distinguish the claims from U.S. Patent 6,741,967 ("Wu") and another reference during the original examination at the PTO.  J.A. 2222–23.

Qualtrics replied with two arguments.  First, Qualtrics contended that the combination of references did, in fact, disclose the allegedly missing limitation.  J.A. 2610–13.  Second, Qualtrics argued that "the prior art considered by the Examiner [*i.e.,* Wu] expressly disclose[d]" receiving customer feedback while the visitor remained at

a particular page. J.A. 2614 (emphasis removed). Although Qualtrics did not specifically cite Wu, it did provide a declaration from its expert, Mr. John Chisholm, opining that Wu disclosed a visitor providing feedback while remaining at a webpage. J.A. 3785–86.

At oral argument before the Board Qualtrics displayed a figure from Wu, which led to a discussion regarding use of the reference. J.A. 4627–30. First, the Board asked counsel for Qualtrics to explain why Wu was not cited as prior art in the petition. J.A. 4628. Counsel for Qualtrics responded that it was "sort of part of the background" because Qualtrics "didn't think that this whole pop-up thing was going to be an issue." *Id.* Next, the Board asked how Qualtrics "would have [the Board] use" Wu. *Id.* Counsel for Qualtrics responded that Wu could be used to show how a skilled artisan would have understood CustomerSat's "Pop!Up" disclosure. *Id.* The Board persisted: "[W]ould [Qualtrics] have us use the Wu reference to establish the benchmark for the person of ordinary skill in the art, their knowledge?" J.A. 4629. Counsel for Qualtrics responded in the affirmative. *Id.*

In its written decision, the Board concluded that the challenged claims are not unpatentable as obvious. First, the Board found that CustomerSat did not disclose receiving user feedback while the user remained at a page. *Final Decision*, 2015 WL 4627944, at *4. The Board reasoned that CustomerSat did not directly depict such a system, and that its disclosure indicated that the survey did not appear on the same page. *Id.* The Board also "credit[ed] the testimony of OpinionLab's declarant, Dr. Michael Shamos" to find that CustomerSat's underlying source code indicated that users were taken to a different web page. *Id.* The Board found that, to the extent that Mr. Chisholm offered a different opinion, "OpinionLab's declarant, Dr. Shamos, refutes expressly, and credibly, the testimony of Mr. Chisholm." *Id.*

The Board found that Medinets also did not disclose that the user provided feedback while remaining at a particular page because although Medinets's feedback form could be modified to remain on the same web page, Medinets did not suggest that feature. *Id.* at \*5. Instead, the Board found that various features of Medinets suggested "that users are taken to a different page, not that they remain on the same page." *Id.* The Board again weighed the expert evidence, finding that "the record reflects that both parties' declarants agree that Medinets fails to teach or suggest" a feedback form that appears on the same page as the button that launches the form. *Id.*

The Board next turned to HTML Spec. The Board determined that although HTML Spec provided general information relating to the use of HTML, it did not disclose using HTML for "creating a feedback form for a website." *Id.* As evidence, the Board cited Mr. Chisholm's admission that HTML Spec does not disclose using HTML to create a survey. *Id.*

The Board finally addressed whether the limitation could be found in the background knowledge of a skilled artisan. Although the Board did not specifically mention Wu, it found that, "to the extent that Qualtrics may rely on the knowledge of a skilled artisan to fill in the gaps found to exist in the teaching of the HTML Spec, we are not persuaded." *Id.* at \*6. The Board cited testimony from Dr. Shamos that HTML Spec would not have motivated a skilled artisan to make the inventions of the OpinionLab patents, and found that Mr. Chisolm "testified similarly." *Id.*

Based on those findings, the Board concluded that Qualtrics had not proved that the challenged claims would have been obvious over a combination of CustomerSat, Medinets, and HTML Spec. *Id.* Qualtrics timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

We review the Board's factual determinations for substantial evidence and its legal determinations de novo. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015). Obviousness is a question of law based on subsidiary findings of fact relating to "the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of nonobviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007)). Accordingly, we review the Board's findings as to "what a reference teaches and the differences between the prior art and the claimed invention" for substantial evidence. *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1380 (Fed. Cir. 2016). In particular, "[w]e defer to the Board's findings concerning the credibility of expert witnesses." *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010).

We have interpreted *KSR*'s rejection of a "rigid approach to determining obviousness" as requiring us to "read[] the prior art in context," including, where relevant, "the background knowledge possessed by a person having ordinary skill in the art." *Randall*, 733 F.3d at 1362 (quoting *KSR*, 550 U.S. at 418). Accordingly, we have vacated and remanded the Board's conclusion of nonobviousness where there was a question whether the Board properly included evidence of background knowledge in its analysis. *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365–66 (Fed. Cir. 2015).

Qualtrics argues that the Board erred by focusing on the specific disclosures of CustomerSat, Medinets, and HTML Spec, and therefore failing to consider the background knowledge of a skilled artisan as our precedents require. Specifically, Qualtrics argues that the Board should have considered Wu, Mr. Chisholm's testimony,

and the common sense of a skilled artisan when making the findings underpinning its obviousness conclusion. For example, Qualtrics urges that Wu expressly discloses a website visitor entering feedback while the user remains at a particular page. In light of Wu, Qualtrics argues, a skilled artisan would have understood that CustomerSat's "Pop!Up" questionnaire appears in the pop-up window while the user remains on a particular page.

OpinionLab responds that the Board fully considered, and simply rejected, Qualtrics's arguments relating to the disclosure of the cited references. OpinionLab contends that the Board considered Wu during the IPR hearing, and discussed Mr. Chisholm's supplemental declaration addressing Wu in the written decision. As Wu was not cited in the petition for IPR or addressed in more than a cursory manner, OpinionLab argues, there was no error in the Board's treatment.

We agree with OpinionLab that the Board did not err in reaching its conclusion that the challenged claims are not unpatentable as obvious. We see no error in its analysis of the background knowledge of a skilled artisan, and its finding that the cited references do not disclose or suggest a visitor providing feedback while remaining at a webpage is supported by substantial evidence.

The record establishes that the Board was aware of Wu and Qualtrics's arguments, and disagreed that the background knowledge disclosed the missing limitation. The Board specifically questioned counsel for Qualtrics regarding Wu during the IPR hearing. In the written decision, the Board addressed the supplemental declaration in which Mr. Chisholm discussed Wu. *Final Descision*, 2015 WL 4627944, at *4–6. Moreover, the Board specifically found that "the knowledge of a skilled artisan" did not "fill in the gaps found to exist in the teaching of the HTML Spec." *Id.* at *6. The only "gap" in HTML Spec was whether it disclosed allowing a user to

provide feedback while remaining at a particular page, *see id.* at *5; accordingly, the Board found that background knowledge did not disclose that feature.

Our decisions in *Randall* and *Ariosa* do not counsel otherwise. In *Randall*, the Board did not consider background knowledge at all, even though the references establishing that knowledge had been considered by the examiner during more than three years of *inter partes* reexamination. 733 F.3d at 1357–58, 1360–62. In *Ariosa*, the references at issue were presented in the petition for IPR as well as the experts' opening declarations. 805 F.3d at 1365. In the present case, however, Qualtrics did not include Wu in its petition, *see* J.A. 101–64, or in its opening expert declaration, *see* J.A. 531–650. Even when Mr. Chisholm did address Wu in his supplemental declaration, he opined that Wu taught providing feedback while the user remained at a particular page, but did not opine whether or how Wu would have informed a skilled artisan's understanding of CustomerSat. *See* J.A. 3785–86. Qualtrics's reply in the IPR similarly did not address whether or how Wu would have informed the background knowledge of a person of ordinary skill. *See* J.A. 2613–14. Qualtrics cannot now complain that the Board focused on the very references that Qualtrics insisted be the focus of this IPR, not Wu.

Qualtrics also argues that Mr. Chisholm's testimony relating to CustomerSat and the background knowledge of a skilled artisan establishes that CustomerSat's survey would have been understood to appear in a pop-up window. The Board, however, specifically considered Mr. Chisholm's testimony, weighed it against Dr. Shamos's testimony, and chose to credit Dr. Shamos. See *Final Descision*, 2015 WL 4627944, at *4–5. Qualtrics's arguments do not convince us that the Board's decision to credit Dr. Shamos was in error, particularly in light of the strong deference that we give to the Board's credibility determinations. *See Yorkey*, 601 F.3d at 1284.

To the extent that Qualtrics challenges any of the findings that the Board made as to the disclosure of the references, those findings are supported by substantial evidence. The Board analyzed each reference, made detailed and reasoned findings regarding their disclosures, with specific citations to the references and the record, and also addressed, in detail, the expert testimony regarding each reference. *Id.* at *4–6. To the extent that the experts disagreed with each other—and the Board noted that in many instances they did not disagree—the Board chose to credit the testimony of Dr. Shamos over the testimony of Mr. Chisholm. *Id.* We discern no reversible error in that choice. Accordingly, the Board's factual findings are supported by substantial evidence. In light of those findings, particularly the finding that the combination of references did not disclose a visitor providing feedback while the visitor remained at a particular web page, the Board did not err in concluding that the challenged claims are not unpatentable as obvious.

## CONCLUSION

We have considered the remaining arguments, but find them unpersuasive. For the foregoing reasons, the decision of the Board is affirmed.

## **AFFIRMED**

### COSTS

No costs.